JAMES C. WILSON *vs.* NORTHWESTERN MUTUAL ACCIDENT ASS'N.

Argued May 3, 1893.     Affirmed June 12, 1893.

**Proofs of Death, by Whom Furnished to Accident Insurance Company.**

Where an administrator, with the implied consent of an accident indemnity association, adopts and relies upon the act of a third party, who has filed with such association proof of a claim growing out of the accidental killing of such administrator's intestate, a member of the association, the latter will not be allowed to defeat a recovery upon the ground that it was incumbent on the administrator to file the proof himself, or that he could not, with its implied consent, adopt as his own that filed by such third party.

**Classification of Occupations.**

Where a certain alleged trade or occupation is not mentioned at all in a manual of classification prepared and adopted by such an association, it is not classed as noninsurable.

**Contributory Negligence as a Defense to an Action upon a Policy of Insurance against Accidents.**

Where an accident happens, and injuries result to a member of such an association, the certificate being in the form of that held by plaintiff's intestate, a recovery cannot be defeated on the ground of a voluntary exposure to a danger contemplated by the parties. Nor is it a good defense that the accident was caused by the mere carelessness or negligence of the assured.

**"Pointing" Held Mason Work.**

*Held,* upon the evidence produced upon the trial, that the jury was warranted in finding that the work in which the assured was engaged when fatally injured was part of the trade or occupation of a brick mason.

Appeal by defendant, Northwestern Mutual Accident Association, from an order of the District Court of Hennepin County, *Seagrave Smith,* J., made September 17, 1892, denying its motion for a new trial.

The defendant is a corporation organized under the Laws of this State, doing business at Minneapolis, insuring its members against bodily injury caused by external, violent and accidental means. On July 24, 1891, it accepted Snorrie Benson, a brick mason, as a member, and agreed, in case his death should result from such means, to pay his legal representatives within ninety

days thereafter $1,500. Among the conditions of his insurance were the following: "The insured agrees to give immediate notice in writing to the Association, at Minneapolis, of any accidental injury, stating full particulars thereof, with name, address and number of certificate. If he be injured while engaged in an occupation classified by the Association as more hazardous than that named in this certificate, the indemnity paid shall be that only of such more hazardous class, or if engaged in an occupation classed as not insurable by the Association, no indemnity shall be paid. This insurance does not cover unnecessary exposure to danger, unless in an effort to save human life. No action at law for recovery hereunder shall be begun until ninety days from the date of filing satisfactory proof of claim, nor unless begun within one year after accident."

On August 18, 1891, while the insured was pointing, cleaning and repairing the brick walls of the West Hotel in that city, he fell from the scaffolding, and was so severely injured that he died therefrom nine days thereafter. Notice and proofs of injury and death were given the Association on September 5, 1891, by Stephen Jones, a friend of deceased. The plaintiff, James C. Wilson, was on November 2, 1891, duly appointed administrator of the estate of the deceased. He afterwards went with his attorney to the office of the Association, and they were there told by S. T. Johnson, the Secretary, that the proofs were sufficient so far as he knew; if anything was lacking he would notify them. No further or other proofs were ever requested. This action was begun on December 14, 1891. The defendant answered that deceased did not follow the occupation of brick mason, but followed that of pointer, which was much more hazardous, and classed as not insurable by it, and that by reason of such misrepresentation it was deceived and the policy was void; that no notice or proofs of injury or death had been made or given it by any one interested or authorized to make or give them; that deceased unnecessarily and knowingly exposed himself to danger by engaging in the work of pointer, and in a place, and upon a scaffold, which he knew to be unsafe, not properly stayed and exceedingly dangerous.

The issues were tried June 13, 1892. The Judge in his charge to the jury said: "If you find that the occupation of the deceased

was that of bricklayer or mason, and that pointing is a part of a brick-mason's trade, then there was no such misrepresentation as to his occupation as to render this certificate of insurance invalid." To this charge the defendant excepted. The jury returned a verdict for plaintiff, and assessed his damages at $1,500. Defendant moved for a new trial, and being denied, appeals.

*James O. Pierce*, for appellant.

Plaintiff, in his complaint, alleged that he had made due proofs of claim in accordance with the terms of the policy, and defendant, in its answer, denied that proofs had been furnished by any person under the contract. No waiver of this condition by defendant was pleaded. Thus the issue was as to actual performance, and not as to waiver; and under the statute the plaintiff was bound to establish on the trial the facts showing such performance. 1878 G. S. ch. 66, § 109. Not having pleaded a waiver, plaintiff could not prove a waiver, but was limited to proving performance. *Mosness* v. *German-American Ins. Co.*, 50 Minn. 341; *Guerin* v. *St. Paul Fire & M. Ins. Co.*, 44 Minn. 20. The defendant objected to the reception of the said proofs of claim and to any evidence relating thereto, and, at the close of plaintiff's case in chief, moved for a dismissal. The action of the trial court was based upon the theory of an adoption or ratification by the plaintiff of the proofs furnished before his appointment.

A stranger to the contract, in no way interested in the insurance, cannot interfere or affect the rights of either party. Proofs of death served by such stranger may be treated as impertinent. Proofs of claim are to be made only by a party interested. Cooke, Life Ins. § 116; Bacon, Life Ins. § 406. The plaintiff must furnish the proofs required as a condition to the right of recovery. *Bowlin* v. *Hekla Fire Ins. Co.*, 36 Minn. 433; *Home Mut. Life Ass'n* v. *Seager*, 128 Pa. St. 533.

Benson's conduct in working upon a swinging scaffold was an unnecessary exposure to danger, and, not being in an effort to save human life, placed his injury wholly outside of the contract, so that no recovery whatsoever could be had upon the policy. The danger was both imminent and obvious. The risk was extreme. A more dangerous kind of employment it would be difficult for

men to engage in, unless possibly it might be ballooning. The dangers of railway operating would be insignificant in comparison. No insurance company could with safety or propriety insure against such risks. The defendant did not insure against them, and did not know that Benson was so exposing himself. *Anderson* v. *H. C. Akeley Lumber Co.*, 47 Minn. 128; *Shaffer* v. *Travelers' Ins. Co.*, 31 Ill. App. 112; *Sawtelle* v. *Railroad Pass. Assur. Co.*, 15 Blatch. 216; 18 Ins. Law J. 892; *Tuttle* v. *Travelers' Ins. Co.*, 134 Mass. 175; *Cornish* v. *Accident Ins. Co.*, 23 Q. B. D. 453; *Travelers' Ins. Co.* v. *Jones*, 80 Ga. 541; *Miller* v. *Travelers' Ins. Co.*, 39 Minn. 548; *Hull* v. *Equitable Acc. Ass'n*, 41 Minn. 231.

Benson, when injured, was engaged in the occupation of pointer, which occupation was classed by defendant as not insurable, so that, under the conditions of the contract, no indemnity was to be paid. There is a difference between the occupations of pointer and brick mason. The two phrases "pointer," and "brick-mason," are by no means synonymous. The instruction given, which allowed the jury to find that pointing was a part of a brick-mason's trade, was insufficient and misleading, because it disregarded the distinct occupation known as that of pointer. By reason of these errors, the defendant was not allowed fairly to reach the jury with the important feature of its defense, that the occupation in which the insured was injured was one wholly excepted from the provisions of the policy. The court assumed that if it were sometimes a part of a mason's duty to point walls, that would abolish all distinction between the two occupations of pointer and brick-mason. It was entirely immaterial that a mason might sometimes do some of the work of a pointer. This in no respect blended the two occupations into one. If the insured had in fact followed both occupations, he should have so stated in his application. *Aldrich* v. *Mercantile Acc. Ass'n*, 149 Mass. 457.

*Steele & Rees* and *W. A. Kerr*, for respondent.

Whether it was necessary to plead a waiver of proofs of loss is of no moment now. No objection was made in the court below to the reception of evidence on that ground. Defendant, by objecting

to the evidence on specifically stated grounds, waived all objection on other grounds. Both parties considered the questions of ratification, adoption, and waiver of proofs of loss, as issues in the case, and introduced evidence concerning them. Parties to an action can consent to try issues not presented by the pleadings, and where issues other than those raised by the pleadings are tried, it will be presumed that they were litigated by consent.

After plaintiff was appointed administrator, defendant negotiated with him and never asked for further proofs, but presumed, as was the fact, that plaintiff was relying on the proofs which had been received and retained by defendant. *American Life Ins. Co.* v. *Mahone*, 56 Miss. 180; *Miller* v. *Eagle Life & Health Ins. Co.*, 2 E. D. Smith, 268; *Continental Life Ins. Co.* v. *Rogers*, 119 Ill. 474; *Gellatly* v. *Minnesota Odd Fellows' M. B. Soc.*, 27 Minn. 215; *Newman* v. *Springfield F. & M. Ins. Co.*, 17 Minn. 123, (Gil. 98;) *Knickerbocker Life Ins. Co.* v. *Pendleton*, 112 U. S. 696; *Home Ins. Co.* v. *Baltimore Warehouse Co.*, 93 U. S. 546; *Vankirk* v. *Citizens' Ins. Co.*, 79 Wis. 627.

If the work in which Benson was engaged was dangerous, and his support insecure, and he knew it, he would be voluntarily exposing himself to danger; and the Judge instructed the jury that if they found those facts to exist, they must return a verdict for defendant. But whether or not these facts did exist was a question for the jury. In an action on a policy of accident insurance, negligence or carelessness of the insured is no defense. *Providence Life Ins. & Inv. Co.* v. *Martin*, 32 Md. 310; *Stone* v. *United States Casualty Co.*, 34 N. J. Law, 371.

If Benson was a pointer by trade, the instruction of the court covered defendant's contention; there was abundant evidence to show that pointing was a part of a mason's trade. The question of the two trades of mason and pointer, and whether Benson was one or the other or both, was fully considered by the jury on all the evidence, and they found against defendant. The policy insured Benson against accident on any branch of his business, in pointing as well as in laying brick. Defendant's witnesses testified that brick-masons do pointing. *Grattan* v. *Metropolitan Life Ins. Co.*,

80 N. Y. 281; *Eggenberger* v. *Guarantee M. A. Ass'n,* 41 Fed. Rep. 172; *McGurk* v. *Metropolitan Life Ins. Co.,* 56 Conn. 528; Cook, Life Ins. §§ 38, 52, 53.

Deceased was insured as a brick-mason. The insurer must have known that one of the duties required of a brick-mason was pointing. Appellant argues that pointing was not classified by it as insurable. Neither was it classified as not insurable. The manual of appellant and its classification is silent on this occupation.

Collins, J. Plaintiff's intestate, Benson, whose occupation was therein stated as that of a brick mason, held a certificate of membership in defendant indemnity association, when he accidentally received injuries which caused his death soon afterwards. This certificate contained several conditions,—one being that, if Benson should be injured when engaged in an occupation classed as not insurable by the association, nothing should be paid; and another, that a recovery could not be had, under the terms of the certificate, in case the injury received was the result of unnecessary exposure to danger, unless in an effort to save human life. Satisfactory proof of a claim was required as a condition precedent to payment. At the time of the accident, Benson, with other men, was at work upon a swinging scaffold, engaged in "pointing" the walls of an eight-story brick building, the scaffold being suspended from the roof by means of ropes. Between the third and fourth stories of the building there was a projection some three feet wide, and the scaffold had been dropped below this projection as the men progressed downward with their work, which consisted in "pointing" or finishing up the lines of mortar, and replacing defective or broken brick in the walls.

The projection carried the scaffold out too far from the building, and it had been brought back to convenient working distance by means of small guy ropes, one at each end, running from the scaffold to windows. One of the workmen stepped from the scaffold into a window, and immediately after one of these ropes broke, causing the scaffold to swing out several feet, throwing Benson and another workman to the walk below. Fatal injuries were received by the former.

1. It is claimed by defendant that no proof of the claim was presented to it prior to the commencement of this action by plaintiff administrator.

It appears from the evidence that, soon after Benson's death, one Jones, who claimed to be a creditor of his estate, procured a blank form for proof of the claim from defendant association. This blank was filled out and verified by Jones, and filed with the secretary of the association by one of the plaintiff's attorneys. No point is made that the proof was insufficient in form. Soon afterwards plaintiff was appointed administrator of the estate by the proper tribunal, and at once called upon the secretary, in company with the attorney before mentioned, a duly-certified copy of the letters of administration being presented. The secretary was asked if the proof theretofore served was sufficient, and was informed that if further proof was required it would be furnished by the administrator. He replied that the papers then filed were sufficient, so far as he knew, and that if anything was lacking, or if further proof was needed by himself or the association, the administrator or his attorney would be notified. It is conceded that no other or further proof was demanded, and that afterward, prior to the bringing of the suit, the association, by its agents and officers, made several attempts to settle the claim. Its officers knew that the administrator relied upon their statement in respect to further proof, and relied upon, and had adopted, the action of Jones in respect to proof. The association never objected to this, or to paying the claim on the ground now advocated. After the time has expired within which plaintiff, as administrator, could file proof of the claim, and an action has been commenced, the defendant cannot be allowed to defeat a recovery on the ground that it was incumbent upon plaintiff himself to file the proof, or that he could not, with its implied consent, adopt the act of Jones. It is analogous to the reception and retention of defective proof of a claim. In such cases good faith would require that the association give notice indicating the defect, and the failure to object to defective proofs, or a refusal to pay on other grounds, is regarded as an acceptance of the defective proofs, and a waiver of defects. *American Life Ins. Co.* v. *Mahone,* 56 Miss. 180; *Miller* v. *Eagle Life & Health Ins. Co.,* 2 E. D. Smith,

268; *Continental Life Ins. Co.* v. *Rogers,* 119 Ill. 474, (10 N. E. Rep. 242.)

But appellant calls attention to the fact that, in the complaint, plaintiff alleged the making and filing of proper proof of the claim by him, which was put in issue by the answer, and that no waiver of full performance of the condition precedent to recovery was pleaded in the reply. Not having pleaded a waiver, plaintiff was limited to proof of performance as alleged in the complaint, is the position of appellant's counsel, who cites *Guerin* v. *St. Paul F. & M. Ins. Co.,* 44 Minn. 20, (46 N. W. Rep. 138,) and *Mosness* v. *German-American Ins. Co.,* 50 Minn. 341, (52 N. W. Rep. 932,) in support of the position. We need not consider the condition of the pleadings on this subject, because no objection was made on that ground to the reception of testimony relative to the filing of proof of the claim by Jones, plaintiff's subsequent reliance upon and adoption thereof, with the implied consent of defendant's officers, the statement of the secretary that this proof was satisfactory, so far as he knew, and other statements and acts which estopped defendant association from asserting that satisfactory proof of the claim had not been made. Nor was the point made when defendant moved for a verdict in its favor at the close of the evidence. All questions of ratification, adoption, and waiver of proof, other than that furnished by Jones, were evidently regarded as proper issues under the pleadings, and it is now too late for counsel to insist that they were not. He is concluded by his course upon the trial.

2. The certificate stated that Benson was a brick mason by occupation, as hereinbefore mentioned, and it was claimed by appellant that he was not a brick mason, nor engaged in the work of a mason, when injured; that "pointing" up a wall is no part of a mason's work, and that the occupation of a "pointer" was classed by defendant association as noninsurable; so that, under the conditions of the certificate, no indemnity was to be paid. An attempt was made by appellant to show, by means of a manual pertaining to classification, that the occupation of a "pointer" was classed as noninsurable. This manual has not been made a part of the record and its contents are unknown to us; but, from an admission of counsel made upon the trial in connection with this attempt, it seems that the occupation of a "pointer" was not classi-

fied at all in the same. With this admission it is apparent that such occupation, if there be such, was not classed as noninsurable.

In this connection it may be well to consider the claim of defendant association that the trade or occupation of a "pointer" is not that of a brick mason. There was testimony produced in its behalf, upon the trial, to the effect that these are distinct trades or occupations, but the preponderance of proof was that the work of finishing or pointing up a wall is usually done by masons. On small or common brick buildings the workmen do this as they remove the staging used when laying up the walls; commencing at the top, of course. On large or elegant structures, especially when pressed brick are used for facings, the staging so used is first removed, and then a hanging scaffolding is swung from the top, as it was in this instance, and as the work proceeds the workmen lower themselves by means of ropes and pulleys, exactly as do painters who have occasion to paint the outside of a building. Undoubtedly, in the large cities, where there is an abundance of this special branch of a mason's work, there are men who become adepts in it, and are usually employed in finishing and pointing up walls, precisely as there are men who are engaged in the work of shingling roofs, or putting on lath; and there are probably men who have become skilled as pointers or shinglers or lathers, who could not be put down as brick masons or as carpenters. Yet at the same time the work of pointing is a part of a brick mason's trade, just as the work of shingling a roof or putting on lath is, properly speaking, that of a carpenter. This was clearly established by the testimony, and is a matter of common observation.

3. Counsel argue that, even if pointing up a wall is part of the trade of a brick mason, Benson unnecessarily exposed himself to danger when working upon a scaffold suspended as this was. There is nothing of merit in this argument. When he became a member of defendant association, both parties contemplated that he would be exposed to the danger incident to his occupation. The association was organized for the very purpose of indemnifying persons engaged in trades or occupations in which accidents were imminent, and almost unavoidable, and Benson's object was to secure indemnity in case of accident. When such accident happens, and injuries result, a recovery cannot be defeated on the ground of voluntary

exposure to a danger contemplated by the parties because pertaining to the business of the assured. *National Benefit Ass'n* v. *Jackson*, 114 Ill. 533, (2 N. E. Rep. 414.) Yet if the scaffold on which Benson was at work was insecure and unsafe, and he knew it, he would be exposing himself to danger unnecessarily, and in case of accident the defendant would not be liable. These were matters for the jury to pass upon, under proper instructions, and on this feature of the case the court charged as requested by defendant's counsel. Ordinarily, what is due diligence for personal care and safety, in a given case, is for the jury. *Stone* v. *United States Casualty Co.*, 34 N. J. Law, 371. Nor is it a good defense, in an action of this nature, that the accident was caused by the mere carelessness or negligence of the assured. In cases where the foundation of the action is an injury occasioned by the negligence of a defendant, and the liability grows out of such negligence, it is always a good defense to show contributory negligence on the part of the plaintiff; but here the liability is created by a contract, one of the chief objects of which was to protect the assured against his own mere carelessness or negligence. *Provident Life Inv. Co.* v. *Martin*, 32 Md. 310.

4. Referring to the defense interposed by defendant, that Benson had unnecessarily exposed himself to danger, the learned trial court erroneously used the words "gross negligence." But this error was at once corrected, for in connection with this language the court gave the very full and elaborate instructions prepared by defendant's counsel, as to what would constitute an unnecessary exposure to danger, within the meaning of the clause in the certificate. This instruction was illustrated by, and referred to, the facts, as shown on the trial, and was enlarged upon by the court in its own language; and there could have been no misunderstanding on the part of the jury as to what would constitute unnecessary exposure to danger, under the certificate, sufficient to defeat recovery. No prejudice resulted from the use by the court of the words "gross negligence."

5. Other assignments of error need not be specially discussed. Order affirmed.

VANDERBURGH, J., took no part.

(Opinion published 55 N. W. Rep. 626.)